IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICTOR H. MONDRAGON,                           CV. 08-134-MA

           Plaintiff,                  OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.

David B. Lowry
H. Peter Evans
9900 S.W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

    Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
Brittania I. Hobbs
Assistant United States Attorney
1000 S.W. Third Ave, Suite 600
Portland, Oregon 97204-2902

    Attorneys for Defendant

MARSH, Judge

    Plaintiff Victor H. Mondragon seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C.

§ 1383(c)(3).  For the reasons that follow, I AFFIRM the final
decision of the Commissioner.

## STATEMENT OF FACTS

Plaintiff alleges disability beginning June 12, 2003 due to
low back pain, right shoulder tendonitis, and depression.
Plaintiff has a history of a lower back injury with a discectomy
in 1999.  Plaintiff was 47 years old at the time of the
administrative law judge's (ALJ) decision.  Plaintiff attended
school through the sixth grade in Mexico, has not attended school
in the United States, and does not have a GED.  Plaintiff's
primary language is Spanish, although he speaks English and is
able to read some English.  He has past relevant work as a
cannery worker.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential
process for determining whether a person is disabled.  Bowen v.
Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520,
416.920.  Each step is potentially dispositive.  The claimant
bears the burden of proof at steps one through four.  See Tackett
v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the
burden shifts to the Commissioner to show that the claimant can
do other work which exists in the national economy.  Andrews v.
Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability.  See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*

At step two, the ALJ found that plaintiff had the following severe impairments:  lumbar degenerative disc disease and right-shoulder tendonitis.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work except that he is limited to frequent climbing of ramps and stairs and frequent balancing. Plaintiff's RFC also includes that he is limited to occasional stooping, kneeling, crouching, crawling and climbing of ladders, ropes, and scaffolds, and is limited to no overhead lifting with his right upper extremity.  See 20 C.F.R. §§ 404.1527, 404.1529. 416.927, 416.929.

At step four, the ALJ found plaintiff capable of performing his past relevant work (PRW) as a cannery worker.  See 20 C.F.R. §§ 404.1565, 416.965.  Because the ALJ found plaintiff able to perform PRW, the ALJ did not reach step five.  Accordingly, the

ALJ concluded that plaintiff was not disabled within the meaning of the Act.

In appealing the ALJ's decision to the Social Security Appeals Council, plaintiff submitted additional evidence in the form of MRI results dated March 31, 2005, submitted by his treating physician Dr. Mark Czarnecki, and a letter dated August 29, 2007 from an independent medical examiner. (Transcript of Social Security Administrative Record (Tr.) at 7.) The Appeals Council considered the additional evidence and concluded that no change to the ALJ's decision was warranted.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed several errors: (1) failing to find his mental impairments severe at Step Two; (2) failing to adequately assess his mental limitations in the RFC; (3) failing to properly assess the physician's opinions; (4) improperly assessing the lay witness testimony; (5) erroneously concluding that he is capable of performing his past relevant work; and (6) posing an inadequate hypothetical to the vocational expert.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039. "Substantial evidence

4 - OPINION AND ORDER

means more than a mere scintilla but less than a preponderance;
it is such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion." Id.   The court must weigh
all the evidence, whether it supports or detracts from the
Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772
(9th Cir. 1986).  The Commissioner's decision must be upheld,
even if the evidence is susceptible to more than one rational
interpretation.  Andrews, 53 F.3d at 1039-40.  If the evidence
supports the Commissioner's conclusion, the Commissioner must be
affirmed; "the court may not substitute its judgment for that of
the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th
Cir. 2001).

## **DISCUSSION**

### I.    **The ALJ Did Not Err at Step Two.**

Plaintiff alleges the ALJ erred at step two in concluding
that his mental impairments of depression and chronic pain
disorder were not severe.  At step two, the ALJ must determine
whether the claimant has any combination of impairments which
significantly limits his ability to do basic work activities.  20
C.F.R. §§ 404.1520(c); 416.920(c).

In this case, the ALJ resolved step two in plaintiff's
favor, concluding that plaintiff had demonstrated impairments
(lumbar degenerative disc disease and right-shoulder tendonitis)
necessary to satisfy step two.  (Tr. 17-18.)  The ALJ properly

continued the sequential decision making process until reaching a determination at step four.  Any error in failing to designate plaintiff's mental impairments as not severe did not prejudice him at step two, as step two was resolved in his favor.   Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting obesity from list of severe impairments at step two was harmless because step two was resolved in claimant's favor); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four). Accordingly, I find no error in the ALJ's decision concluding that plaintiff's alleged mental impairments were non-severe.

Plaintiff's argument may be construed as a challenge to the ALJ's RFC assessment.  Once a claimant has surmounted step two by showing any severe impairment, the ALJ must consider the functional limitations imposed by all medically determinable impairments, including those found non-severe at step two, in the remaining steps of the decision.  20 C.F.R. §§ 404.1523; 416.923. I address that contention, as well as his other arguments concerning the RFC, directly below.

## II.  The ALJ's RFC Assessment

A claimant's RFC describes the work-related activities a claimant can do, despite the functional limitations imposed by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a); Social

Security Ruling (SSR) 96-8p, 1996 WL 37184.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements, to determine the extent to which his medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his capacity to do work.  Id.

In this case, plaintiff makes several arguments relating to the ALJ's RFC assessment.  First, plaintiff contends that the ALJ's RFC fails to address any functional limitations posed by plaintiff's depression, chronic pain disorder or functional overlay.  Second, plaintiff argues that the ALJ failed to adequately address the medical opinions of Dr. Czarnecki, his treating physician, as well as those of Dr. Miller and Dr. Wicher.  And third, plaintiff contends that the ALJ erred in concluding that he is limited to overhead in reaching with his right arm, as opposed to reaching in all directions.

**A.    The RFC Adequately Assessed Plaintiff's Mental Limitations.**

According to plaintiff, the ALJ failed to account for his non-severe mental limitations of depression, chronic pain disorder and functional overlay in the RFC.  I disagree.

In this case, it is clear that the ALJ found little evidence to substantiate any functional limitations posed by plaintiff's

mental impairments.  Here, the examining psychologists
consistently found affirmative evidence of malingering and
symptom exaggeration pertaining to plaintiff's mental
impairments.  The ALJ discussed the results of a June 2001
psychological examination (MMPI-2) performed by Dr. Donna Wicher,
Ph.D. (Tr. 337.)  In that report, which was conducted with the
purpose of evaluating plaintiff's depression, Dr. Wicher assessed
a pain disorder, however, she noted the results were unreliable
because they indicated "an exaggerated response set, most likely
reflecting an attempt to claim excessive problems." (Tr. 341-42.)
Dr. Wicher's report also indicated that "[t]here is no objective
evidence that [plaintiff] suffers from Major Depressive
Disorder."  (Tr. 345.)  This was confirmed by a consultative
examination performed in February 2007, after plaintiff's
December 2006 hearing had been continued in an effort to
substantiate plaintiff's complaints of mental impairments.  Dr.
Lawrence Lyon, Ph.D. diagnosed Malingering:

> Due to [plaintiff's] clear pattern of
> malingering on neuropsychological testing, no
> statements can be made regarding his current
> level of intellectual or memory function.  In
> addition, it is unclear whether he suffers
> from an affective disorder, given his
> exaggeration of symptoms on the MMPI-2 and
> his apparent lack of candor in answering
> interview questions.  Though the current
> evaluation does not directly address any pain
> issues, the above observations of Mr.
> Mondragon's behavior during the lengthy
> evaluation session suggests that he may be

exaggerating his pain and the limitations
posed on him by it.  (Tr. 518.)

And the ALJ discussed a Psychiatric Review Technique Form
(PRTF) completed by Dr. Frank Lahman, who assessed non-severe
depression, stating that plaintiff did not meet the "B" criteria,
in that plaintiff was only mildly restricted in his activities of
daily living, and suffered no difficulties in maintaining social
functioning, maintaining pace, concentration, persistence or
pace, and suffered no episodes of decompensation.

The ALJ did not accept plaintiff's contention of depression
and a chronic pain disorder which impose limitations in excess of
his RFC assessment.  The ALJ found plaintiff's subjective
statements relating to his chronic pain disorder and depression
to be unreliable and discounted their severity on that basis.
Indeed, plaintiff does not challenge the ALJ's adverse
credibility determination.

Contrary to plaintiff's contention, the ALJ detailed
numerous medical reports supporting his RFC assessment.  For
example, the ALJ noted that in March 2000, Dr. Williams found
that plaintiff's report of severe back pain and Waddell's testing
positive in both compression and traction were usually indicative
of symptom embellishment and he opined that plaintiff could
perform medium capacity work.  In March 2001, Dr. Hartog reported
that plaintiff could lift "30 pounds rarely, 20 pounds

occasionally and 10 pounds frequently." (Tr. 20.) The ALJ also
noted that in June 2001, Dr. Hartog agreed with several other
physicians that plaintiff should return to work. And the ALJ
noted that in January 2003, Dr. Hartog released plaintiff to
return to work as a pump operator, a medium capacity job. The
ALJ also discussed that Dr. Hartog and Dr. Miller agreed that the
pump operator position was too strenuous, and a functional
capacity assessment was conducted in March 2003. The ALJ also
noted that plaintiff again was seen by Dr. Miller in February
2004, and that plaintiff demonstrated pain that was out of
proportion to any physical signs of distress.

To be sure, the ALJ considered the March 2003 physical
functional capacity assessment conducted by Providence
Rehabilitation Services. As the ALJ noted, the assessment
reported that plaintiff was capable of full-time light duty work
with the ability to sit for four hours, stand for one hour, and
move/walk for six hours and could occasionally lift 20 pounds and
frequently lift ten pounds from the floor the waist. The
assessment also noted that plaintiff had limited overhead
reaching with his right upper extremity. (Tr. 407-415.)

Additionally, the ALJ noted similar findings of plaintiff's
physical capacities in an RFC assessment completed by Dr. Howard
Johnson in July 2004. Dr. Johnson, a reviewing physician, found

plaintiff capable of light duty work, with some postural and reaching limitations.

The ALJ also noted that plaintiff's subjective complaints of pain continued to be without objective verification.  The ALJ noted that a March 2005 EMG nerve conduction study conducted by Dr. Lawrence Neville, M.D. was normal, without any evidence of neurologic compromise.  And, the ALJ also noted that in July 2006, Dr. Czarnecki, plaintiff's treating physician, wanted to establish verification of any nerve root entrapment. (Tr. 22.)

Following the hearing and before the Appeals Council, plaintiff submitted new evidence in the form of an independent medical examination performed by Dr. Thomas Rosenbaum, a neurosurgeon. (Tr. 537-544.) In that report, Dr. Rosenbaum diagnosed plaintiff as suffering from a herniated disc, with no root nerve compression, with a "profound functional overlay" and somatoform disorder.  Plaintiff now argues that this "functional overlay" is further evidence of his mental impairments.

When the Appeals Council considers materials not seen by the ALJ and concludes that the materials provide no basis for review of the ALJ's decision, a reviewing court may consider the additional materials when it determines whether there is substantial evidence supporting the Commissioner's decision. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.), cert. denied,

121 S. Ct. 628 (2000).  <u>See also</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

Here, the Appeals Council reviewed Dr. Rosenbaum's post-hearing opinion and found it did not provide a basis for changing the ALJ's decision.  (Tr. 6-7.) This court reviews the entire record, including Dr. Rosenbaum's opinion to determine whether Dr. Rosenbaum's statement undermines the evidentiary basis for the ALJ's decision.  I conclude that it does not.

Substantial evidence supports the ALJ's RFC determination not only with respect to plaintiff's physical impairments, but also his alleged mental impairments.  Given the weight of the evidence of plaintiff's exaggeration and embellishment of his pain, as well as the fact that plaintiff has not challenged the ALJ's adverse credibility determination, the new evidence does not undermine the evidentiary basis for the ALJ's decision.

Although plaintiff contends that the statements in his medical records of symptom exaggeration are more appropriately interpreted as chronic pain disorder, functional overlay, or a somatoform disorder instead of malingering or embellishment, the ALJ's findings are supported by substantial evidence in the record.  Even if the evidence would also support the interpretation plaintiff now urges, the court must defer to the Commissioner's decision.  <u>Batson</u>, F.3d at 1193; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  Accordingly, I

find no error in the ALJ's assessment of plaintiff's mental impairments in the RFC determination.[1]

**B.    Plaintiff's Treating Physician.**

Plaintiff alleges the ALJ did not properly evaluate the opinion of Dr. Czarnecki, his treating physician.  Dr. Czarnecki stated that he believed plaintiff was unable to work full time at the light or sedentary level.  Although a treating physician's opinion is generally afforded the greatest weight, it is not binding on the ALJ.  Morgan, 169 F.3d at 600.  The ALJ may reject the opinion of a treating physician in favor of the conflicting opinion of examining physicians by providing "specific and legitimate reasons, supported by substantial evidence in the record" for doing so.  Lester v. Chater, 81 F.3d at 830.  The examining physicians opined that plaintiff could work full time in a light capacity.  An ALJ can meet its burden by setting out a detailed summary of the facts and conflicting clinical evidence,

---

[1]Plaintiff's contention that the ALJ's RFC determination did not consider whether plaintiff could work on a regular and continuing basis for eight hours a day, 40 hours a week as required by SSR 96-8 is spurious.  An RFC determination inherently includes the ability of the claimant to perform ongoing work.  See 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). The ALJ found that plaintiff has the ability to perform light work at his former job of cannery worker, as it was actually performed.  There is no requirement that the ALJ use specific language in the RFC denoting plaintiff's ability to work for eight hours a day, five days a week.  See Finazzo v. Astrue, 2009 WL 279033, *6 (W.D. Wash., Feb. 5, 2009) (finding that RFC is not required to contain specific language of "regular and continuing basis" in SSR 96-8p).

stating his interpretation of that evidence and providing

findings.  Mallagenes v. Bowen, 881 F.2d 747, 750 (9th Cir.

1989).

    The ALJ accorded little weight to the opinion of plaintiff's

treating physician that plaintiff is disabled.  The ALJ made the

following findings:

> It is inconsistent with other medical reports
> and assessments.  In addition, Dr. Czarnecki
> stated [plaintiff] had been unable to work
> since approximately the spring of 2003.
> However, Dr. Czarnecki's treatment notes do
> not begin until August 2004 and show only
> four visits before this assessment.  In
> January 2006, Dr. Czarnecki completed another
> assessment; while very similar to the earlier
> one, he stated claimant would need to rest
> for 5 minutes every 20 to 50 minutes.  He
> also stated that "[plaintiff] appeared all
> but unemployable at this time."  However,
> treatment notes show only 5 additional
> appointments before this assessment with a
> break from October 2004 to September 2005.
> Further, in July 2006 Dr. Czarnecki noted
> "working on getting in with Dr. Frank to see
> if some form of verification of nerve root
> entrapment can be made."  (Tr. 22)(internal
> citations omitted).

    As plaintiff correctly notes, rejecting a treating

physician's opinion based solely on the number of contacts may be

insufficient in some cases.  See 20 C.F.R. § 404.1527(d)(2).

However, the ALJ detailed additional reasons in this case.

    Here, the ALJ discredited Dr. Czarnecki's opinion because it

was inconsistent with other evidence in the record.  To be sure,

Dr. Czarnecki was the only provider to opine that plaintiff was

14 - OPINION AND ORDER

unable to work.  The ALJ detailed numerous reports from other medical providers who had concluded that plaintiff was capable of working.  For example, a 2001 medical examination completed by Drs. Samuel Sceinberg and Patrick L. Radecki concluded that plaintiff's complaints were not presented in a straightforward manner, and they could find no objective limitations to his ability to work.  As noted above, Drs. Miller and Hartog, plaintiff's treating physicians immediately prior to Dr. Czarnecki, released plaintiff to full time work in 2003.  And, a functional capacity assessment performed in March 2003 concluded that plaintiff was capable of full-time light duty work. Where the evidence reasonably supports the conclusion reached by the ALJ, and is supported by substantial evidence, this court will not engage in second-guessing.  <u>Tommasetti</u>, 533 F.3d at 1039.

Dr. Czarnecki's conclusion in November 2004 that plaintiff would have difficulty working at the light to sedentary level is inconsistent with other contemporaneous evidence in the record. For example, in July 2004, Howard Johnson, M.D., a reviewing physician, completed a residual functional capacity assessment finding plaintiff capable of performing light work, with some postural and reaching limitations.  Additionally, in March 2005, Dr. Neville reported that an EMG nerve conduction study was normal, with the exception of some pain related behavior.  Dr.

15 - OPINION AND ORDER

Neville diagnosed low back pain, without evidence of neurologic compromise.   And in September 2004, plaintiff was seen by Dr. Moser, who completed a neurological exam.   Dr. Moser also assessed low back pain and left leg pain, however, she found that the exam was fairly non-specific and the nerve conduction studies (although incomplete) were non-diagnostic.   Additionally, Dr. Czarnecki's 2006 statement that he wanted to obtain verification of nerve root entrapment is inconsistent with those of Dr. Moser and Dr. Neville who found no such evidence.   Where a treating physician's opinion is inconsistent with other evidence in the record, an ALJ may appropriately discredit the opinion on that basis.   Tomasetti, 533 F.3d at 1041; Batson, 359 F.3d at 1195; Morgan, 169 F.3d at 602.

The ALJ further discredited Dr. Czarnecki's opinion because it was based in part on plaintiff's self-reports of pain.   A physician's opinion of disability which is premised upon the claimant's own accounts of his symptoms and limitations may be disregarded "where those complaints have been properly discounted."   Morgan, 169 F.3d at 602; Fair v. Bowen, 885 F.2d at 605.   As discussed above, the ALJ discounted plaintiff's subjective complaints of pain with his adverse credibility determination—a finding plaintiff does not challenge.   Accordingly, the ALJ did not err in discrediting Dr. Czarnecki on this basis.

I conclude that the ALJ provided specific and legitimate reasons, when taken together, which are supported by substantial evidence, for rejecting the opinion of plaintiff's treating physician. <u>Batson</u>, 359 F.3d at 1195.

**B.   Drs. Miller and Wicher**

Plaintiff summarily contends that the ALJ failed to adequately assess the opinion of Dr. Charles Miller.  Presumably, plaintiff is arguing that the ALJ failed to adequately discuss Dr. Miller's notations of plaintiff's depressed mood and complaints of chronic pain, as Dr. Miller released plaintiff to resume his regular work duties in January 2003.   The ALJ detailed several of Dr. Miller's treatment records in which Dr. Miller noted that plaintiff demonstrated "pain behavior out of proportion to physical signs of distress."  As discussed above, the ALJ discounted plaintiff's subjective symptoms in the adverse credibility determination--a finding plaintiff does not challenge.   The ALJ's findings are supported by substantial evidence and I find no error.  <u>Tomasetti</u>, 533 F.3d at 1041 ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); <u>Andrews</u>, 53 F.3d at 1039-40.

Plaintiff's conclusory contention that the ALJ failed to adequately address Dr. Wicher's opinion similarly fails.  As noted above, the ALJ discussed Dr. Wicher's findings of exaggerated responses and unreliability of plaintiff's claim of

depression and chronic pain as they related to the ALJ's determination at Step Two and again in the ALJ's adverse credibility finding.  The ALJ's findings are supported by substantial evidence and I find no error.  <u>Tomasetti</u>, 533 F.3d at 1041; <u>Andrews</u>, 53 F.3d at 1039-40.

### C.   Overhead Reaching

Plaintiff also contends that the ALJ erred in determining that plaintiff was limited to no overhead reaching, alleging the ALJ failed to adequately consider a residual functional capacity assessment completed by Dr. Howard Johnson, M.D in July 2004. According to plaintiff, Dr. Johnson recommended that plaintiff is limited in reaching in all directions, whereas the ALJ's RFC determined that plaintiff was only limited to overhead reaching. Plaintiff's argument is meritless.  Upon examination of Dr. Johnson's RFC assessment, it is clear that Dr. Johnson, in the category of manipulative limitations, checked the box on the form relating to reaching in all directions, (it is the only box relating to reaching), and elaborated below that "[plaintiff] should be precluded from overhead reach/lift with the right upper extremity".  (Tr. 468.)  It also bears noting that Dr. Johnson also found plaintiff to be exaggerating:  "[plaintiff's] limitations appear to be overstated when compared to the numerous medical findings."  (Tr. 470.)

Aside from this single report by Dr. Johnson, plaintiff points to no other evidence in his extensive medical record indicating that plaintiff is limited to reaching in all directions, nor does plaintiff identify any other error in the ALJ's assessment pertaining to his right arm and/or shoulder. The ALJ's RFC assessment with respect to plaintiff's arm/shoulder is supported by substantial evidence in the record and I find no error. Andrews, 53 F.3d at 1039-40.

## IV. LAY WITNESS TESTIMONY

Plaintiff contends that the ALJ improperly discredited the lay witness testimony from his wife. Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)(finding the ALJ erred by failing to account for lay witness testimony about a claimant's serious coughing problems); see also Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

It is obvious in this case that the ALJ considered the lay witness testimony presented by plaintiff's wife, Amanda Mondragon. As the ALJ discussed, Mrs. Mondragon submitted a third party report dated March 2004, in which she stated that

plaintiff was able to do chores around the house, such as clean, do laundry, vacuum, and mow, although it took him longer to complete those tasks.  She also reported that plaintiff attended church each Sunday and could walk for 20 minutes before needing to rest.  The ALJ also discussed a second third party report completed by Mrs. Mondragon in September 2004, in which she reported that plaintiff still performed household chores, such as dishes, vacuuming, yard work (including mowing and picking weeds with a hoe), and that plaintiff watched television and was able to drive himself to buy things for the house.   Additionally, she reported that plaintiff was capable of walking one mile before needing to rest.

Here, the ALJ did not reject the lay witness testimony; rather it lends additional support to the ALJ's RFC assessment that plaintiff is capable of performing light exertion work. Indeed, the lay witness testimony demonstrated that plaintiff is capable of performing a wide variety of activities of daily living and that his limiting symptoms are adequately addressed in the RFC.  I find the ALJ adequately accounted for the lay witness testimony.  Bayliss v. Barnhart, 427 F.3d at 1217 (the ALJ may accept lay witness testimony that is consistent with the record relating to daily activities, and may reject portions of testimony that are inconsistent with the medical record and unreliable subjective complaints); Batson, 359 F.3d at 1197-98.

**V.    The ALJ Did Not Err in Finding Plaintiff Capable of
Performing Past Relevant Work and the Hypothetical Posed to
the VE Was Adequate.**

At step four of the sequential evaluation the claimant has
the burden of showing that he can no longer perform his past
relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  The ALJ may rely on a vocational expert (VE)
at step four, to determine whether the mental and physical
demands of a claimant's past relevant work exceed her residual
functional capacity.  20 C.F.R. §§ 404.1520(f), 416.920(f).  A
vocational expert's testimony at Step Four can be useful, but is
not required.  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir.
1993).  If a claimant's past relevant work can be performed by
someone with the claimant's RFC, the ALJ will find the claimant
is not disabled.  Id.

Plaintiff argues that the ALJ's step four findings are
inadequate because the ALJ failed to perform a functional
analysis of his past relevant work as required by SSR 82-62.  SSR
82-62 provides that the ALJ's decision include the following:
(1) a finding of fact as to an individual's RFC; (2) a finding of
fact as to the physical and mental demands of the individual's
past job/occupation; and (3) a finding of fact that the
claimant's RFC permits a return to his past job or occupation.
According to plaintiff, the ALJ's failure to include a comparison
of the physical and mental demands of plaintiff's past work

requires reversal under <u>Sivilay v. Apfel</u>, 143 F.3d 1298 (9th Cir.
1998) and <u>Carmickle v. Commissioner</u>, 533 F.3d 1155 (9th Cir.
2009).  I disagree.

Plaintiff's reliance on <u>Sivilay</u> does not bolster his
argument.  The one paragraph long <u>Sivilay</u> opinion in granting
reversal based on SSR 82-62 does not explain the errors committed
by the ALJ in that case.  Additionally, the <u>Carmickle</u> decision
reversed an ALJ's determination that the claimant could perform
PRW where the ALJ and VE relied upon an erroneous Dictionary of
Occupational Titles classification.  Plaintiff does not challenge
the DOT classification of his past work in this proceeding.

Here, I find no error with the ALJ's findings.  First,
pursuant to SSR 82-62, the ALJ made specific findings of fact as
to plaintiff's RFC.  Second, the ALJ made findings of fact
relating to the physical and mental demands of his past work,
which the ALJ described as being at the light exertional level
and unskilled.  As the VE testified, plaintiff's PRW as a cannery
worker was classified as light and unskilled, work that plaintiff
had previously been released to perform and in fact had been
performing until he was laid off in April 2003.  Further, the
ALJ's RFC contained specific exertional limitations which are
supported by substantial evidence.  And third, the ALJ made a
specific finding of fact that plaintiff can return to work as a
cannery worker.  Therefore, there is nothing deficient about the

ALJ's functional analysis under SSR 82-62 and the case law cited by plaintiff.

I also find no error in the hypothetical posed the VE. Here, the hypothetical included all of those limitations found to be credible and supported by reliable medical evidence in the record:  frequent climbing of ramps and stairs, and frequent balancing, limited to occasional stooping, kneeling, crouching, crawling and climbing of ladders, ropes and scaffolds, with no overhead reaching of the right upper extremity.  Because the hypothetical posed contained all of the limitations that the ALJ found to be credible and supported by substantial evidence in the record, it was proper for the ALJ to rely on the VE's answer. Bayliss, 427 F.3d 1211, 1217-18 (9th Cir. 2005); Batson, 359 F.3d at 1197-98.  Plaintiff has failed to meet his burden of proving that he is unable to perform past relevant work as a cannery worker.  The ALJ's finding at step four is supported by substantial evidence and free of legal error.

## **Conclusion**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.    This action is DISMISSED.

IT IS SO ORDERED.

DATED this _16_ day of MARCH, 2009.


/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge

24 - OPINION AND ORDER